IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge William J. Martínez**

Civil Action No. 10-cv-02681-WJM

RODENY R. VALENZUELA,

      Applicant,

v.

ANGEL MEDINA, Warden, L.C.F., and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

This matter is before the Court on Petitioner Rodney R. Valenzuela's Application

for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") (Doc. No. 2).[1]

Respondents filed an Answer on May 6, 2011.  (Doc. No. 20).  Petitioner filed a traverse

on June 16, 2011.  (Doc. No. 23).  After reviewing the pertinent portions of the record in

this case including the Petition, the Answer, the Traverse, and the state court record,

the Court concludes that the Petition should be denied.

## I.  BACKGROUND

Following a jury trial in case number 04CR0288 in the Jefferson County District

Court of Colorado, Petitioner was convicted of first degree murder after deliberation, first

degree murder–felony murder, first degree kidnapping, attempted robbery, and

conspiracy to distribute a controlled substance.  The following is an accurate and

---

[1] Because the Petitioner appears pro se, the Court construes his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21(1972).  However, the Court does not serve as his advocate. *See Hall v. Bellman*, 935 F.2d 1106, 1110 (10th Cir.1991) .

succinct summary of the facts included in the Colorado Court of Appeals' decision on direct appeal of Applicant's conviction.

> In December 2003, the victim obtained drugs from defendant's brother, Robert Valenzuela. [Donald Drew] arranged the transaction in which the victim agreed to pay $1,200 to defendant's brother within three weeks. The transaction occurred in an apartment where the victim was temporarily living with another man. When the victim failed to pay the amount owed, defendant's brother told [Donald Drew] that defendant should be brought in to get the money but that "things could get nasty" and "possibly somebody could get shot."

> On January 17, 2004, defendant, his brother, and [Donald Drew] went to the victim's apartment and demanded the money from him. The victim said he could not get the money for a couple of weeks. Defendant told him that was not good enough, and he would have to pay them or go with them. The victim's roommate asked them all to leave the apartment, and the four men – defendant, his brother, [Donald Drew], and the victim – got into defendant's car.

> Defendant drove to a nearby parking lot. [Donald Drew] sat in the front seat, and defendant's brother and the victim were in the back. Defendant's brother and the victim got into an argument, and defendant's brother pushed the victim out of the car. [Donald Drew] later testified that he saw defendant get out of the car with a gun in his hands and heard four or five shots. As [Donald Drew] was getting out of the car, he saw defendant standing over the victim and saw defendant shoot the victim in the head. When defendant returned to the car, his brother patted him on the shoulder and said, "I knew you could do it."

> Other witnesses testified that they heard a series of shots. One saw a gunman shoot the victim as he lay on the ground and then walk away. The victim had six gunshot wounds, including one to his face that had been fired from close range.

> Later that same night, defendant told his girlfriend he was in trouble and had shot someone. The girlfriend took him to a friend's house and heard him tell the friend he had "shot somebody."

*People v. Valenzuela* (*Valenzuela I*), No. 05CA1992 (Colo. App. April 24, 2008)

(unpublished opinion), Pre-Answer Response, Ex. C, at 1-2.

At sentencing, the state trial court vacated the felony murder conviction and imposed concurrent life sentences for the first degree murder after deliberation and first degree kidnapping convictions.  State Court R. Vol XXV; Vol. III, at 552.

Petitioner's convictions and sentence were affirmed by the Colorado Court of Appeals in *Valenzuela I*.  Pre-Answer Resp. Ex. C.  The Colorado Supreme Court denied certiorari review on September 2, 2008.  *Id.*, Ex. E.

On June 3, 2009, Petitioner filed *pro se* a motion pursuant to Colorado Rule of Criminal Procedure 35(c), which was denied by the trial court.  The Colorado Court of Appeals affirmed the trial court's order in *People v. Valenzuela* (*Valenzuela II*), No. 09CA1983 (Colo. App. Sept. 30, 2010) (unpublished).  Pre-Answer Resp. Ex. L. Petitioner did not seek certiorari review from the Colorado Supreme Court and the mandate issued on December 1, 2010.  *Id.*, Ex. M.

## II.  FEDERAL COURT PROCEEDINGS

Petitioner asserts the following eight claims in his Petition:

1)  He was denied a fair trial when the prosecutor referred improperly to his brother's guilty plea during opening statement;

2)  He was denied a fair trial when the prosecutor questioned a witness about threats the witness had received from the Petitioner's brother prior to trial; and, when the prosecutor made improper prejudicial remarks during closing argument;

3)  He was denied a fair trial when the trial court failed to instruct the jury on the affirmative defense of self-defense;

4)  There was insufficient evidence to support his kidnapping conviction;

5)  The prosecution failed to disclose/destroyed exculpatory evidence in violation of his due process rights;

6)  Colorado's felony murder statute is unconstitutional; and

7) Trial counsel was constitutionally ineffective in failing to object to the prosecutor's misconduct during closing argument; and, appellate counsel was was ineffective in failing to raise the issue on direct appeal that the jury was instructed improperly on the voluntary intoxication defense.

Petition, at 5-6b.

During the Court's initial review of this action, Senior Judge Lewis T. Babcock entered an order (Doc. No. 15) drawing this case to a district judge and to a magistrate judge. Respondents conceded that the Petition was timely under 28 U.S.C. § 2244(d). Respondents further conceded that Petitioner had exhausted available state remedies for claims one, four, five, and six in their entirety, and for the portion of claim two regarding improper questioning of a witness. Judge Babcock rejected Respondents' arguments that Petitioner failed to exhaust state remedies for claims three and seven, and for the portion of claim two asserting prosecutorial misconduct during closing closing argument. Accordingly, the Court considers the merits of all of Petitioner's claims below.

## III. LEGAL STANDARDS

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that an application for writ of habeas corpus may be granted only if the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams v. Taylor*, 529 U.S. 362, 404-05 (2000).

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard [v. Boone]*, 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

The Court's inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law."

*Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and the Petitioner bears the burden of rebutting the presumption by clear and convincing evidence.

The Court applies the AEDPA deferential standard of review when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the applicant as the federal standard. *See Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005). The Court likewise owes deference to the state court's result if the court reached the merits of the Petitioner's claim, even if the court did not analyze the claim under federal law. *See Aycox v. Lytle*, 196 F.3d 1174, 1177-78 (10th Cir. 1999); *see also Harrington v. Richter*, 131 S.Ct. 770, 785 (2011) (reconfirming "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been "adjudicated on the merits.").

Finally, if the state courts failed to adjudicate a federal claim raised by the Petitioner, the Court considers the claim de novo and the deferential AEDPA standard of review does not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## IV.  DISCUSSION

## A.    Claims One and Two - Prosecutorial Misconduct

Petitioner asserts in his first claim that he was denied his right to a fair trial and to due process of law when the prosecutor improperly referred to his brother's guilty plea during opening statement.  Petition, at 5; *see also* Pre-Answer Resp. Ex. A.

In claim two, he maintains that the prosecutor elicited testimony from a witness concerning threats that were made against him by Petitioner's brother, in violation of the court's ruling *in limine*.  Petitioner further asserts in claim two that the prosecutor engaged in misconduct during closing argument by: repeatedly referred to the killing as an "execution"; arguing that the State was being prevented from showing the jury all  the evidence of Petitioner's guilt; and, urging the jurors to hold Petitioner accountable for his actions in a parking lot of their community.  Petition, at 6.

Habeas relief is appropriate when a prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also United States v. Young*, 470 U.S. 1, 11 (1985) ("Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding.").  In applying this demanding standard, "not every improper or unfair remark made by a prosecutor will amount to a federal constitutional deprivation." *Tillman v. Cook*, 215 F.3d 1116, 1129 (10th Cir. 2000).  The federal habeas court does not consider a prosecutor's statement or argument "word by word in a vacuum," *Paxton v. Ward*, 199 F.3d 1197, 1217 (10th Cir. 1999).  Instead,

> [i]nquiry into fundamental fairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner, both as to guilt at that stage of the trial and as to moral culpability at the sentencing phase. Any cautionary steps-such as instructions to the jury-offered by the court to counteract improper remarks may also be considered. Counsel's failure to object to the comments, while not dispositive, is also relevant to a fundamental fairness assessment.

*Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (citations omitted & emphasis added). "The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutor's conduct." *Bland v. Sirmons*, 459 F.3d 999, 1024 (10th Cir. 2006).

### 1. *Improper remarks during opening statement*

During opening statement, the prosecutor explained the circumstances of the crimes and the involvement of Petitioner and co-participants Robert Valenzuela (Petitioner's brother) and Donald Drew. The prosecutor told the jury that Drew had pleaded guilty to first degree kidnapping and two of the lesser charges, in exchange for dismissal of the homicide charges and his agreement to testify as a witness against the Petitioner. State Court R. Vol. XIX, at 30. The prosecutor then explained: "[T]he brother, Robert Valenzuela, turns himself in. He went into a police station and turns him (sic) himself in. Robert also was charged with these charges, first degree murder, felony murder, kidnapping, and he took – Robert took – pled guilty. What he did, first degree – "[2] At that point, Petitioner's counsel objected to the statement as irrelevant and prejudicial because Robert Valenzuela was not going to testify. *Id.* at 31. Counsel moved for a mistrial, which the trial court denied. *Id.* at 31-32. The trial court then

---

[2]State Court R. Vol. XIX, at 31.

instructed the jury: "Ladies and gentlemen,    . . . [y]ou are to disregard the statements as to what did or did not happen or happened as to Robert Valenzuela.  He's not on trial.  He is not present before you charged with anything in this trial."  *Id.* at 32.

Petitioner argued to the state appellate court on direct appeal that the prosecutor's statement was constitutionally prejudicial because it allowed the jury to infer that Petitioner's brother had pleaded guilty to the same crimes for which the Petitioner was on trial.  Pre-Answer Resp. Ex. A, at 17-18.   The Colorado Court of Appeals concluded that "the trial court's instruction to the jury was sufficient to correct any prejudice to defendant arising from the comments about his brother's plea." *Valenzuela I*, Pre-Answer Resp. Ex. C, at 4.

The prosecutor's comment on the brother's guilty plea in the context of opening statement was improper given that the prosecutor had already explained to the jury that Petitioner and his brother were present at the shooting together and the prosecutor did not intend to call the brother as a witness.  The prejudicial effect was mitigated, in part, by the trial court's curative instruction to the jury to disregard the comment.  Any lingering prejudicial effect was diminished by the overwhelming evidence of Petitioner's guilt of first-degree murder after deliberation.  Donald Drew testified that after Petitioner drove him, Petitioner's brother and the victim to a commercial parking lot, Petitioner's brother pushed the victim out of the car and Petitioner got out of the car carrying a gun. State Court R. Vol. XX, at 91-99.  Drew then heard four or five gunshots. *Id.* at 101. Drew then saw the Petitioner standing over the victim, who was lying on the ground, and shoot him in the head.  *Id.* at 101-02.  The evidence showed that the victim suffered six gunshot wounds to his body.  State Court R. Vol. XXII, at 194.  The forensic

pathologist, who was also qualified as an expert in the recognition of the effect of gunshot wounds on the human body, opined that a gunshot wound to the victim's face was fired from a distance of between six and thirty-six inches away. *Id.* at 192, 199-200. The pathologist further opined that the cause of death was head wounds secondary to a gunshot wound to the back of the head. *Id.* at 217. A witness at a nearby gas station heard a series of gunshots and saw the gunman fire the final shot into the victim, who was laying on the ground, and then walk away "nonchalantly." State Court R. Vol. XIX, at 58-68. Petitioner's girlfriend testified that Petitioner admitted to her a few hours after the killing that he had "shot somebody." *Id.*, Vol. XX, at 279. The girlfriend also overheard a telephone conversation in which the Petitioner explained to someone that he and his brother went to get money from a guy; the guy didn't have the money; they all went for a ride; they argued; the Petitioner shot the guy; the guy ran away; and the Petitioner shot him several more times. *Id.* at 285-87. Petitioner told another friend on the night of the shooting that he "f—ed up" and "shot somebody." *Id.*, Vol. XXI, at 180-81. Viewing the trial proceeding in its entirety, the state appellate court's determination that Petitioner was not prejudiced by the prosecutor's comment during opening statement was not contrary to or an unreasonable application of clearly established federal law because the Petitioner's convictions were the result of a fair trial

proceeding that comported with due process.[3]  Accordingly, Petitioner is not entitled to federal habeas relief for his first claim.

## 2. *Improper questioning of witness*

Petitioner asserts in claim two that the prosecutor elicited testimony from a witness concerning threats that were made against him by the Petitioner's brother, contrary to the court's ruling *in limine.*  Petitioner further asserts in claim two that the prosecutor engaged in misconduct during closing argument by: repeatedly referred to the killing as an "execution"; arguing that the State was being prevented from showing the jury all  the evidence of Petitioner's guilt; and, urging the jurors to hold Petitioner accountable for his actions in a parking lot of their community.

Before trial, Petitioner moved to exclude evidence of an alleged plan by his brother to kill the witnesses who intended to testify for the State at Petitioner's trial. State Court R. Vol. II, at 328-29.  The trial court ruled that evidence concerning threats made against third parties after the shooting was inadmissible.  *Id.*, Vol. XX, at 113-114. However, at trial, a prosecutor who was not present for the court's pre-trial ruling questioned a witness as follows:

Prosecutor: Did you ever see [Petitioner] after [the shooting]?

Witness: No, sir.

---

[3]Petitioner argues in his Traverse that the state appellate court failed to identify *Bruton v. United States*, 391 U.S. 123 (1968) as the correct controlling legal principle.  Traverse, at 4.  In *Bruton*, the Supreme Court held that "a defendant is deprived of his rights under the Confrontation Clause when his nontestifying codefendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant." *Richardson v. Marsh*, 481 U.S. 200, 201-02 (1987).  Here, the brother's confession was not introduced at Petitioner's trial, nor were the brothers tried together.  Instead, the state court record reveals only that Robert Valenzuela pleaded guilty to some of the charges and the prosecutor referred to his plea agreement during opening statement.  Accordingly, the prosecution did not offer any statements by Petitioner's brother into evidence that would have invoked the *Bruton* rule.

Prosecutor: Okay, how about [Petitioner's brother]?

Witness: Yes, I saw him after that.

Prosecutor: And did you talk about this, or did he make reference to this incident?

Witness: Just that I shouldn't talk or call the cops. Or, you know, if I did, he was going to take care of me.

State Court R. Vol. XX, at 112.   Petitioner's counsel objected and the trial court instructed the jury:  "Disregard that last statement, ladies and gentleman.  It's stricken. You are not to consider that last statement."  *Id.* at 113.  The trial court denied Petitioner's motion for a mistrial, admonished the prosecutor for disobeying its prior ruling, and the prosecutor apologized for misunderstanding the court's ruling.  *Id.* at 114. The trial court again instructed the jurors that they were "to disregard [the witness's testimony] as if it was never said."  *Id.*

On direct appeal, the state appellate court "agree[d] [that] the elicited testimony was improper, but in light of the trial court's curative instruction, we conclude the trial court did not abuse its discretion in denying the motion for mistrial."  *Valenzuela I*, Pre-Answer Resp. Ex. C, at 5.

The Court finds that the state appellate court's ruling was not contrary to or an unreasonable application of federal law because the improper questioning did not rise to the level of a due process violation.  The trial court immediately gave a curative instruction to the jury.  Moreover, as discussed above, the evidence of Petitioner's guilt was substantial.  And, the trial court instructed the jury at the conclusion of the trial to consider only the evidence before it in rendering its verdict.  State Court R. Vol. III, at 486.

### 3. *Improper remarks during closing argument*

Petitioner also objects to comments made by the prosecutor during closing argument. First, Petitioner argues that the prosecutor's repeated reference to the victim's killing as an "execution," State Court R. Vol. XXIV, at 11-14, was calculated to inflame the passions or prejudices of the jury. The Colorado Court of Appeals determined that there was no impropriety under Colorado law:

> The evidence at trial established that one of the gunshot wounds to the victim's face was fired from between six inches and three feet away. This close-range shooting can be fairly described as an "execution style" murder. Therefore, the prosecutor's comments were "fair comment on the evidence and not improper." *People v. Walters*, 148 P.3d 331, 337 (Colo. App. 2006); . . . . Furthermore, when defense counsel objected to the repeated use of the term "execution style" murder, the trial court instructed the jury that counsel's arguments were not evidence, and we presume the jury followed the instruction. *See Domingo-Gomez*, 125 P.3d at 1053.

*Valenzuela I*, Pre-Answer Resp. Ex. C, at 7.

The evidence at trial showed that Petitioner was shot in the head from a distance of six inches to three feet while he was lying on the ground,[4] consistent with what the courts have described as an "execution-style" killing. *See, e.g.*, *United States v. Williams*, 445 F.3d 724, 727 (4th Cir. 2006) ("She had been shot through the head execution-style, while she was kneeling and the killer was standing over her."); *Gray v. Hardy*, 598 F.3d 324, 332 (7th Cir. 2010) (the killing "was an execution style murder, with the victim being shot three times in the back of the head after being knocked to the ground.") (internal quotation marks and citation omitted). Accordingly, the state appellate court's determination that the prosecutor's comments about the execution-

---

[4]State Court R. Vol. XXII, at 199-200.

style killing were "fair comment on the evidence" was based on a reasonable determination of the facts in light of the evidence presented and was not inconsistent with federal law. *See Bland*, 459 at 1028 ("a prosecutor may comment on and draw reasonable inferences from evidence presented at trial") (internal quotations and citation omitted). Further, the trial court reminded the jury that counsel's arguments were not evidence. A jury is presumed to follow the court's instructions. *See Richardson v. Marsh,* 481 U.S. 200, 211 (1987). The state appellate's determination that the prosecutor's conduct was not improper was consistent with federal law.

Petitioner next asserts that the prosecutor told the jury that the State was being prevented from showing the jury all the evidence of Petitioner's guilt. However, this issue, as stated in the Petition, was not presented to the Colorado Court of Appeals and finds no support in the state court record. On direct appeal of his conviction, Petitioner challenged the propriety of the prosecutor's assertion to the jury "[y]ou know what I know about, generally," State Court R. Vol. XXIV, at 29, followed by the prosecutor's argument that "we have proven" all five charges. *Id.* at 29, 36. Petitioner contended on direct appeal that the prosecutor testified improperly and used the force of his office to persuade the jury that Petitioner was guilty. The Colorado Court of Appeals reviewed this claim for plain error and found none. *Valenzuela I*, Pre-Answer Resp. Ex. C, at 9.

Generally "prosecutors should not . . . place their own integrity and credibility in issue." *Moore v. Gibson*, 195 F.3d 1152, 1173 (10th Cir. 1999). However, the prosecutor did not express his personal belief about the truth or falsity of any testimony or evidence. Further, the trial court instructed the jury to consider only the evidence in the case in making its decision. The prosecutor's remarks, when viewed in the context

of the entire trial proceeding and the significant evidence of Petitioner's guilt, "did not prejudice petitioner by influencing the jury to stray from its responsibility to be fair and unbiased." *See Young*, 470 U.S. at 18.  Accordingly, the state appellate court's finding that the prosecutor's comment did not amount to plain error, *see* Pre-Answer Resp. Ex. C at 8-9, was not contrary to or an unreasonable application of Supreme Court law. *See Young*, 470 U.S. at 16 (prosecutor's inappropriate remarks do not rise to level of plain error unless they undermine the fairness of the trial and contribute to a miscarriage of justice); *see also Donnelly*.

Finally, Petitioner asserts that the prosecutor engaged in improper argument when he asked the jury to "hold [defendant] accountable for his conduct. This conduct in broad daylight, in a parking lot in our community, to blast someone in the head, a helpless man in the head."  State Court R. Vol. XXIV, at 36-37.  According to Petitioner, by making this comment, the prosecutor suggested that the jurors had a duty to keep their community safe and also intended to inflame the passions of the jury.  Again, the Colorado Court of Appeals found no plain error in the prosecutor's comments. *Valenzuela I*, Pre-Answer Resp. Ex. C, at 9-10.

It is improper for the prosecutor to suggest that the jury has a civic duty to convict. *See Thornburg v. Mullin*, 422 F.3d 1113, 1134 (10th Cir. 2005).  But where, as here, the prosecutor's comments are "firmly rooted in the facts of the case," any impropriety is diminished significantly.  *Id.*  And, in light of the weighty evidence pointing to Petitioner's culpability, the prosecutor's comment did not compromise the jury's ability "to fairly judge the evidence."  *Bland*, 459 F.3d at 1024; *see*, *also*, *Spears v. Mullin*, 343 F.3d 1215, 1247 (10th Cir. 2003) (statement that "justice cries out for [conviction]" did

not render trial fundamentally unfair); *Le*, 311 F.3d 1002, 1022 (10th Cir. 2002) (prosecutor's comment that jury "could only do justice . . . by bringing in a verdict of death" did not render trial fundamentally unfair). Accordingly, the state appellate court's disposition of this issue was not contrary to or an unreasonable application of federal law.

Petitioner also asserts in his Traverse that he is entitled to relief under the cumulative error doctrine because the prosecutor's improper questioning and comments, when considered together, had the aggregate effect of denying him a fair trial. Traverse, at 6. Petitioner raised a cumulative error claim on direct appeal, which the state appellate court rejected summarily on the merits. Pre-Answer Resp. Ex. A, at 39; *Valenzuela I*, *id.*, Ex. C, at 5.

The cumulative error doctrine applies only when there are two or more actual errors, and it does not apply to the accumulation of non-errors. *Castro v. Ward,* 138 F.3d 810, 832 (10th Cir. 1998). On federal habeas review, a cumulative error analysis applies only to cumulative *constitutional* errors. *Young v. Sirmons*, 551 F.3d 942, 972 (10th Cir. 2008). Because Petitioner has failed to show even one instance of prosecutorial misconduct resulting in a violation of his due process rights, "there is nothing to cumulate." *Id.* (internal quotation and citation omitted). As such, the state appellate court's determination was not contrary to, or an unreasonable application of, federal law.

Petitioner is not entitled to habeas relief for his second claim.[5]

**B.    Claim Three**

Petitioner asserts in claim three that he was denied a fair trial in violation of due process when the trial court failed to instruct the jury on the affirmative defense of self-defense.  Petition, at 6.

The trial court rejected Petitioner's tendered instruction on the affirmative defense of self-defense because Petitioner did not present any credible evidence at trial that at the time of the shooting, he had a reasonable belief that he was defending himself or others from the use or imminent use of unlawful physical force by the victim. Trial Court R. Vol. XXIII, at 86-88.

"As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (internal quotation marks and citation omitted); *see also Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995) ("A state trial conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial.").  Thus, a habeas petitioner's burden in attacking a state court judgment based on a refusal to give a requested jury instruction is onerous because "'[a]n omission, or an incomplete instruction, is less likely to be prejudicial than

---

[5]Respondents continue to press their argument that Petitioner failed to exhaust state remedies for the portion of his second claim asserting that the prosecutor made improper remarks during closing argument.  *See*  Answer, at 14.  However, the Court's disposition of claim two on the merits renders that argument moot.  *See* 28 U.S.C. § 2254(b)(2).

a misstatement of the law." *Tyler v. Nelson*, 163 F.3d 1222, 1227 (10th Cir. 1999)

(quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).

To determine whether the state trial court's refusal to instruct the jury on the

affirmative defense of self-defense violated Petitioner's federal constitutional right to due

process, the Court looks to Colorado self-defense law to evaluate whether, under state

law, Petitioner was entitled to such an instruction. *Tyler*, 163 F.3d at 1227.

The state appellate court rejected Petitioner's claim on the following grounds:

> Defendant next contends the trial court erred in refusing his
> tendered instruction on self-defense and the defense of others. He
> maintains that the court applied an incorrect standard when it found there
> was no "credible evidence" to support the affirmative defenses. According
> to defendant, the correct standard is whether there was "any evidence" to
> support the defenses. We disagree.
>
> Whether sufficient evidence has been presented to raise a factual
> issue as to the existence of a defense, warranting an instruction to the
> jury, is a question of law for the trial court. *People v. Silva*, 987 P.2d 909,
> 915 (Colo. App. 1999). A defendant is entitled to have the jury properly
> instructed with respect to self-defense if there is any evidence tending to
> establish it. *Idrogo v. People*, 818 P.2d 752, 754 (Colo. 1991); *Silva*, 987
> P.2d at 914. But a defendant is not entitled to have the jury instructed
> regarding self-defense if there has been no evidence of a critical element
> of that defense. *See People v. Yaklich*, 833 P.2d 758, 763 (Colo. App.
> 1991) (error to give self-defense instruction where evidence was
> insufficient to support defendant's theory that she was in imminent danger
> at the time her husband was killed).
>
> Self-defense requires an actual and reasonable belief on the part of
> the defendant that he is defending himself against the imminent use of
> unlawful force. Thus, before the issues of self-defense and the defense of
> others go to the jury, there must be evidence from which it can determine
> that the defendant actually and reasonably had such a belief. *See People
> v. Suazo*, 867 P.2d 161, 169 (Colo. App. 1993).
>
> The standard applied by the trial court here followed the statutory
> language defining an affirmative defense. See § 18-1-407(1), [COLO.
> REV. STAT.] C.R.S. 2007 ("affirmative defense" means that unless the
> state's evidence raises the issue involving the alleged defense, the

defendant, to raise the issue, shall present some credible evidence on that issue); *see also Cassels v. People*, 92 P.3d 951, 955 (Colo. 2004)(requiring some credible evidence to support an instruction on affirmative defense).

The trial court here found, with record support, that defendant failed to present any credible evidence to support a jury instruction on self-defense or defense of others. We agree with that ruling.

Section 18-1-704(1), C.R.S. 2007, provides:

[A] person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for that purpose.

In this case, the only evidence presented to show self-defense or the defense of others was a witness's anonymous phone call and later report to the police that the victim had pulled a knife on defendant. However, this evidence turned out to have been based on hearsay. The caller was located and testified that a friend had told her "there may have been a chance the [victim] could have pulled a knife on [defendant and his brother]" because the friend thought it was unlikely that the victim would not have defended himself. This testimony was speculative and did not warrant a self-defense or defense of others instruction.

*Valenzuela I*, Pre-Answer Resp. Ex. C, at 10-12. The state appellate court's interpretation of state self-defense law to require "credible" evidence to support a self-defense or defense-of-others instruction is not subject to review by this Court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Furthermore, the Court of Appeals' factual findings are presumed correct under 28 U.S.C. § 2254(e)(1) and are supported by the state court record. *See* State Court R. Vol. XXI, at 243-45; Vol. XXII, at 8-15. To prevail on his claim, Petitioner must rebut that

presumption of correctness with clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1).

Petitioner asserts in support of his claim that the "testimony . . . showed the victim often carried a knife. . . ."  Petition, at 6.   Two witnesses, John Spivey and Donald Drew, testified at Petitioner's trial that they had seen the victim several times before he died and that the victim carried a folding knife in his pants pocket.  State Court R. Vol. XX, at 158; Vol. XXI, at 249-50.  Critically, however, there is no evidence that the Petitioner knew the victim had a knife on his person at the time Petitioner shot him.  And, there is no credible evidence that the victim pulled a knife on the Petitioner or anyone else present at the shooting.  Accordingly, the Court finds that the state appellate court's decision was based on a reasonable determination of the facts in light of the evidence presented, and was not contrary to or an unreasonable application of Supreme Court law.  Petitioner is not entitled to habeas relief for his third claim.[6]

## C.   **Claim Four**

In claim four, Petitioner asserts that there was insufficient evidence to support his conviction for first degree kidnapping. Petition, at 6a.

The Petitioner's constitutional challenge to the sufficiency of the evidence is governed by *Jackson v. Virginia*, 443 U.S. 307 (1979).  Evidence is sufficient to support a conviction as a matter of due process if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.*  at 319 (emphasis in the

---

[6]Respondents also persist in their argument that Petitioner failed to exhaust state remedies for his third claim. *See*  Answer, at 18.  However, the Court's disposition of claim three on the merits renders that argument moot. *See* 28 U.S.C. § 2254(b)(2).

original).  The Court looks at both direct and circumstantial evidence in determining the sufficiency of the evidence.  *See Lucero v. Kerby,* 133 F.3d 1299, 1312 (10th Cir. 1998).  The Court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)).

In applying *Jackson*, the Court looks to state law to determine the substantive elements of the offense.  *See Jackson*, 443 U.S. at 324 n.16; *Valdez v. Bravo*, 373 F.3d 1093, 1097 (10th Cir. 2004).  Under Colorado law, a person commits first degree kidnapping when that person:

> (1) . . . does any of the following acts with the intent thereby to force the victim or any other person to make any concession or give up anything of value in order to secure a release of a person under the offender's actual or apparent control . . . :
> (a) Forcibly seizes and carries any person from one place to another; or
> (b) Entices or persuades any person to go from one place to another; or
> (c) Imprisons or forcibly secretes any person.

C.R.S. § 18-3-301 (2004).

Petitioner argues that the evidence at trial was insufficient to sustain his conviction because it demonstrated that the victim accompanied him and his brother voluntarily from the location of their initial encounter at the request of the victim's friend.  Petition, at 6a.

The Colorado Court of Appeals resolved Petitioner's challenge to the sufficiency of the evidence pursuant to a state law standard that is substantially identical to the *Jackson* standard, *see Valenzuela I*, Pre-Answer Resp. Ex. C, at 13, and rejected Petitioner's claim based on the following reasoning:

Defendant next contends there was insufficient evidence to support his conviction for kidnapping. We are not persuaded.

. . . .

Here, the jury was instructed that the elements of kidnapping in the first degree are:

1. That the defendant,
2. in the State of Colorado, at or about the date and place charged,
3. enticed or persuaded [the victim to go] from one place to another,
4. with intent to force that person or any other person to make a concession or give up anything of value,
5. in order to secure the release of the person under the defendant's actual or apparent control; and
6. the person kidnapped suffered bodily injury as a result of the kidnapping.

This instruction tracks the statutory definition of kidnapping. See § 18-3-301, C.R.S. 2007.

At trial, the victim's roommate testified that when defendant, his brother, and [Donald Drew] came over on the night of the offense, they demanded money from the victim and told him if he did not pay it, he would have to go with them. [Donald Drew] similarly testified that defendant had yelled at the victim at the apartment and that if the victim had tried to leave the car, [Donald Drew] would have tried to stop him.

Looking at this evidence in the light most favorable to the prosecution, we conclude there was sufficient evidence to establish first degree kidnapping.

*Valenzuela I*, Pre-Answer Resp. Ex. C, at 13-14.

Again, the state court's factual findings are presumed correct and are supported by the state court record. *See* State Court R. Vol. XIX, at 259-262; Vol. XX, 81-85, 91-92. The evidence further shows that Petitioner drove the car from the victim's roommate's house to a commercial parking lot, that the victim and Petitioner's brother argued during the drive, and that Petitioner's brother pushed the victim out of the car when they arrived at the parking lot. *Id.*, Vol. XX, at 92-96. Viewed in a light most

favorable to the prosecution, a rational jury could have concluded beyond a reasonable doubt that Petitioner "enticed or persuaded [the victim]" to leave his friend's apartment and get into the car with Petitioner and the co-participants, where Petitioner was then driven to the location of the shooting. Petitioner has not rebutted the state court's factual findings with any clear and convincing evidence to the contrary. The Court therefore finds that the state appellate court reasonably applied the *Jackson* standard in determining that there was sufficient evidence presented at Petitioner's trial to support Petitioner's conviction for first degree kidnapping. Petitioner thus cannot prevail on his fourth claim.

**D.      Claim Five**

In claim five, Petitioner asserts that the prosecution failed to disclose exculpatory evidence when it did not notify the defense that a female called the Lakewood Police Department on the day of the shooting and reported that the victim pulled a knife on three Hispanic males. Petition, at 6a. Petitioner asserts that when the defense was finally notified about the 911 call over seven months later, the original digital recording had been destroyed, there were gaps in the audio cassette recording provided to defense counsel, and the source of the reporting witness's information could not be located. *Id.* Petitioner maintains that the failure to timely disclose the original recording prevented him from discovering and developing a material witness with potentially exculpatory information concerning an affirmative defense, in violation of his federal due process right to a fair trial.

An accused's due process rights are violated under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), when the prosecution suppresses material evidence that was favorable to the accused as exculpatory or impeachment evidence. See *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999). Evidence is material if there is a reasonable probability that, "had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). In a late disclosure case, the materiality question is whether there is a reasonable probability that the outcome of the trial would have been different had the State disclosed the information earlier. *See Knight v. Mullin*, 293 F.3d 1165, 1172-73 (10th Cir. 2002).

Under *California v. Trombetta*, 467 U.S. 479, 489 (1984), the State may not destroy evidence with "an exculpatory value that was apparent before it was destroyed" where the evidence might not be available to the defendant through other means. The State's failure to preserve potentially exculpatory evidence violates the Constitution only if law enforcement authorities acted in bad faith. *See Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988).

In September 2004, Petitioner filed a motion for sanctions against the prosecution for discovery violations, arguing that the prosecution failed to disclose that the Lakewood Police Department had received an anonymous tip in January 25, 2004 concerning Petitioner case. State Court R. Vol. II, at 226. The tip included information that the victim was killed because he owed money to Donald Drew and the Mexican mafia and that the mafia was only going to "rough [the victim] up, but [the victim] pulled a knife at a large Mexican guy." *Id.* The trial court held a hearing on the motion. State Court R. Vol. XVII. At the hearing, Sheryl Johnson, the tipster, testified that the

24

information she relayed to the 911 dispatcher about the victim's shooting was given to her by John Spivey.  *Id.* at 5-9.  Spivey, in turn, told Johnson that he had received his information from a person named "Doug Drewin."  *Id.* at 10-11.  Ms. Johnson identified a photograph of co-participant Donald Drew as possibly being the person she knew as "Doug."  *Id.* at 15.  Ms. Johnson had no personal knowledge about the circumstances of the victim's shooting.  *Id.* at 15.

A cassette tape recording of the 911 call made by Ms. Johnson to the Lakewood police department was provided to the defense on September 8, 2004, but the original digital recording of the 911 call was destroyed in June 2004.  State Court R. Vol. XVII, at 36, 46-47, 55.  The transcript of the audio cassette recording contains breaks at points where Ms. Johnson is describing the shooting to the 911 dispatcher.  *Id.* at 38.  The prosecution represented the audio cassette recording to be a duplicate of the original digital recording.  *Id.* at 47.

The trial court ruled that the prosecution failed to disclosure information to the defense that was potentially exculpatory, and that the failure to disclosure the evidence in a timely manner, which resulted in destruction of the evidence by the State, prevented the defense from developing a potential witness– *i.e.*, the individual who allegedly provided information to John Spivey about the circumstances of the shooting.  State Court R. Vol. XVII, at 55-57.  As a sanction, the Court allowed the defense to call Ms. Johnson as a trial witness and to play the 911 tape recording to the jury.  *Id.* at 58.  The trial court also instructed the jury about the prosecution's discovery violation and the evidence that was destroyed and therefore would not be presented at trial.  *Id.* at 59.  The trial court further found that the destruction of the 911 tape was "[not] intentional, or

an intentional act to hinder, hide, or prevent exculpatory evidence from being discovered. *Id.*

In his opening brief on direct appeal, Petitioner postured his argument as both a state law discovery violation, and a federal due process violation under *Brady* and *California v. Trombetta.* Pre-Answer Resp. Ex. A, at 40-44. The Colorado Court of Appeals addressed Petitioner's claim as a challenge to the state trial court's sanction imposed for the discovery violation. Within this context, the state appellate court concluded that Petitioner was not prejudiced by the discovery violation. The state court ruled:

> The trial court held an evidentiary hearing and found that dismissal of the murder charges was not an appropriate sanction, because defendant had failed to show he was prejudiced by the discovery violations. However, the court permitted the actual phone call that was made by the anonymous caller (who was later identified and located by the police) to be played for the jury at trial and instructed them about the discovery violation.

> Defendant nevertheless argues that because of the delay in the disclosure, he was unable to locate and question the caller's sources of information. However, the caller testified at a motions hearing and at trial about how she had received the information. She testified that she was told the victim had allegedly pulled out a knife by a man named "Bud" and another named "Doug." She also testified that a person with the initials [John Spivey] was referred to as "Bud" and she identified [Donald Drew] as the man she knew as "Doug." A defense investigator interviewed [John Spivey] and learned that his information came from a man named "Tim," whom the defense could not locate. [John Spivey] testified at trial that his information about the incident came from a man named "Tim."

> Defendant claims that, if he had received prompt disclosure of this information, he would have been able to locate "Tim" and "Doug," which would have substantially strengthened his self-defense and defense of other arguments. However, Doug was located because the caller testified that the man she knew as "Doug" was really D.D., and he testified at trial. The defense also had a year from the disclosure until the trial to find "Tim."

26

Thus, while we agree with defendant that it was improper for the prosecutor not to disclose immediately the anonymous phone call and for the police to expunge the original conversation, we conclude the trial court's sanctions were appropriate and not an abuse of discretion. . . .

*Valenzuela I*, Pre-Answer Resp. Ex. C, at 14-17.

Although the Colorado Court of Appeals did not address Petitioner's claim as a federal due process claim, its decision is not inconsistent with the principles of *Brady* and *Trombetta* because Petitioner has not shown that he was prejudiced by the late disclosure. John Spivey and Doug Drew were available to the defense and testified at trial. Spivey, who was a friend of the victim's, testified that he had no personal knowledge about the circumstances of the victim's death. State Court R. Vol. XXI, at 244-45. Spivey testified at trial that he told Cheryl Johnson, the "anonymous" tipster, that the victim was not the type of person to sit back and "have someone beating him up, that there may have been a chance that he could have pulled a knife on them or something along those lines." *Id.* at 244. It was Spivey's opinion that the victim would try to defend himself. *Id.* at 245. Spivey identified Russell Seidel, a "Tim," and the newspaper as his sources of information about the shooting. *Id.* at 246, 249. Seidel was available to the defense and testified at Petitioner's trial. The person identified by Spivey as "Tim" was never located. However, there is no information in the state court record to indicate that "Tim" witnessed the victim or someone acting on the victim's behalf pull a knife on the Petitioner or a co-participant at the time of the shooting. As such, Petitioner cannot show a reasonable probability that the outcome of his trial would have been different if the State would have disclosed the 911 call earlier. *See Sandoval*

*v. Ulibarri*, 548 F.3d 902, 915 (10th Cir. 2008) (no *Brady* violation where assertion of materiality was based on speculation and conjecture).

Furthermore, Petitioner's supposition that the original 911 digital recording may have contained critical information not included on the audio cassette recording is insufficient to demonstrate a violation of the Petitioner's due process right under *Trombetta*. *See Youngblood*, 488 U.S. at 56 n.* (noting that the possibility that the destroyed evidence could have exculpated the defendant if preserved or tested is not enough to satisfy the standard of constitutional materiality in *Trombetta*). The information on the tape is at best only *potentially* exculpatory in that Ms. Johnson did not have first-hand knowledge of the shooting. She simply relayed information given to her by another individual, John Spivey, who himself did not witness the shooting. And, there is nothing in the record to indicate that the State acted in bad faith in destroying the original digital recording. *See Youngblood*, 488 U.S. at 57-58.

Accordingly, the Court finds that the state appellate court's disposition of Petitioner's claim was not contrary to, or an unreasonable application of Supreme Court law. Petitioner is therefore not entitled to habeas relief for his fifth claim.

**E.    Claim Six**

For his sixth claim, Petitioner challenges Colorado's felony murder statute as unconstitutional. Petition, as 6a. Respondents argue that Petitioner's sixth claim is moot because his felony murder conviction was vacated. Answer, at 26.

To pursue a case in federal court, a plaintiff must satisfy the twin requirements of Article III standing and mootness. *Winness v. Yocom*, 433 F.3d 727, 731 (10th Cir. 2006). To establish standing to challenge the constitutionality of a criminal statute,

Petitioner must show (1) he has suffered an injury in fact, (2) traceable to the defendants, (3) that can be redressed by a favorable decision of this Court. *Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The "mere presence on the statute books of an unconstitutional statute, in the absence of enforcement or credible threat of enforcement, does not entitle anyone to sue." *Winsness*, 433 F.3d at 732. Standing is determined at the time the action is brought. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC)*, 528 U.S. 167, 180 (2000).

Petitioner was tried and convicted of first degree murder–felony murder. The state trial court vacated the felony murder conviction at sentencing because it merged with petitioner's conviction for first degree murder after deliberation. The Double Jeopardy Clause prohibits Petitioner from being tried again for the same offense. *See Brown v. Ohio*, 432 U.S. 161, 165 (1977). To the extent Petitioner would argue that he faces future threat of prosecution under the felony murder statute for a crime he has not yet committed, that argument is based purely on speculation and conjecture, which cannot support Article III standing. *See Lujan*, 504 U.S. at 560 (a plaintiff's injury must be "actual or imminent, not conjectural or hypothetical"). Petitioner therefore lacks Article III standing to prosecute his sixth claim.

The claim is also moot because the felony murder conviction has been vacated and the Court therefore cannot grant any effectual relief to Applicant. *See Chihuahuan Grasslands Alliance v. Kempthorne*, 545 F.3d 884, 891 (10th Cir. 2008).

Accordingly, Petitioner's sixth claim must be dismissed for lack of subject matter jurisdiction.

## F.    Claim Seven

Petitioner asserts in his seventh claim that: (1) trial counsel was constitutionally ineffective in failing to object to the prosecutor's misconduct during closing argument, which caused the state appellate court to review the prosecutorial misconduct claim under a plain error standard; and, (2) appellate counsel on direct appeal was ineffective in failing to argue that the jury was instructed improperly on the voluntary intoxication defense.  Petition, at 6b.

To prevail on his claim that trial counsel's failure to raise an objection to prosecutorial misconduct during closing argument was constitutionally ineffective, Petitioner must show that: (1) counsel's legal representation fell below an objective standard of reasonableness; and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Judicial scrutiny of counsel's performance is highly deferential.  *Id.*  at 689.  Counsel's decisions are presumed to represent "sound trial strategy;" "[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong."  *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999) (internal quotations omitted).  Prejudice exists when there is a reasonable probability that, but for counsel's defective representation, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 693. The Court need not address both prongs of the *Strickland* inquiry if Petitioner's claim fails on one.  *Id.*  at 697.

Petitioner's claim of ineffective assistance of appellate counsel is also governed by the *Strickland* standard.  *See Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003).

"[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)).  It therefore is difficult to demonstrate that counsel was incompetent in failing to raise an issue on appeal.  *Id.*  In order to evaluate appellate counsel's performance, the court "look[s] to the merits of the omitted issue." *Cargle*, 317 F.3d at 1202 (quotation omitted). "If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance . . . ." *Id.*  On the other hand, if the omitted issue "has merit but is not so compelling, . . . [the court must assess] . . . the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission." *Id.* Omission of a meritless issue does not constitute deficient performance. *Id.* (citation omitted).

## 1. *Ineffective assistance of trial counsel*

Petitioner claims that his trial counsel was constitutionally ineffective in failing to object to the prosecutor's misconduct during closing argument, which caused the state appellate court to review the prosecutorial misconduct claim under a plain error standard.

The state appellate court applied the *Strickland* standard, *see Valenzuela II*, Pre-Answer Resp. Ex. L, at 2, and determined the following in resolving Petitioner's claim that his trial counsel was constitutionally ineffective:

> Defendant . . . argues that his trial counsel was ineffective for failing to object to instances of alleged prosecutorial misconduct during closing

argument. On direct appeal, a division of this court considered defendant's arguments regarding allegedly improper remarks during the prosecutor's closing argument and concluded that the comments were not improper. Although these issues were reviewed on a plain error standard, the division concluded that the conduct in question did not constitute error at all. *See Valenzuela I.* Because the division concluded the prosecutor's remarks did not constitute error, trial counsel was not deficient in failing to object to the remarks. Furthermore, defendant does not allege any resulting prejudice from the allegedly improper remarks. Accordingly, we conclude the trial court did not err when it denied defendant's motion for postconviction relief on the grounds of ineffective assistance of trial counsel. *See Ardolino*, 69 P.3d at 77.

*Id.*, at 7-8.

The Court addressed the merits of Petitioner's prosecutorial misconduct claim, as asserted in claim two of the Petition, and found that to the extent any of the remarks made by the prosecutor in closing argument were improper, they did not render the Petitioner's trial fundamentally unfair so as to violate due process. Consequently, Petitioner cannot show that he was prejudiced by counsel's failure to object to the remarks. The Court finds that the state appellate court determination of Petitioner's ineffective assistance of trial counsel claim was a reasonable application of *Strickland*. Petitioner cannot prevail on the first portion of his seventh claim.

## 2. *Ineffective assistance of appellate counsel*

Petitioner next asserts that his counsel on direct appeal was ineffective in failing to raise the issue that the jury was not instructed properly on the voluntary intoxication defense. Petitioner argued to the state appellate court in his post-conviction proceeding that, pursuant to C.R.S. § 18-1-804(1), his trial counsel requested and was granted a voluntary intoxication instruction, but the trial court, over counsel's objection, did not allow a separate instruction to be tendered to the jury. Pre-Answer Resp. Ex. I, at 8. Petitioner asserts that he was prejudiced by the trial court's failure to instruct the jury

32

separately as to his voluntary intoxication defense, and by appellate counsel's failure to

raise the meritorious issue on direct appeal. *Id.*; Petition, at 6b.

At trial, Petitioner tendered an instruction regarding voluntary intoxication that

read in relevant part:

> You may consider evidence of self-induced intoxication in determining whether or not intoxication negates the existence of the culpable mental state of specific intent.
>
> You may also consider evidence of self-induced intoxication in determining whether or not intoxication negates the element of "after deliberation."
>
> The prosecution has the burden of proving all the elements of the crimes charged. If you find [defendant] was intoxicated to such a degree that he did not form the specific intent which is a required element of the [crimes charged], you should find him not guilty of those charges.
>
> Additionally, since "after deliberation" is part of the culpable mental state required by First Degree Murder – After Deliberation, if you find that [defendant] was intoxicated to such a degree that he did not act after deliberation, you should find him not guilty of First Degree Murder – After Deliberation.

State Court R. Vol. III, at 475.

The trial court gave the following instruction instead:

> Evidence of self-induced intoxication may be considered by you when it is relevant to negate the existence of the culpable mental states of "with intent" and/or "after deliberation" in First Degree Murder – After Deliberation, First Degree Kidnapping, and Felony Murder based upon Kidnapping.
>
> Intoxication is not a defense to the crimes of Felony Murder based upon Attempted Robbery, Attempted Robbery, Conspiracy to Distribute Cocaine or Second Degree Murder.

*Id.* at 498.

The trial court noted in an instruction explaining Petitioner's theory of the case

that "[i]t is the defendant's theory of the case that [defendant] shot [the victim] in an

intoxicated reaction to what he perceived to be a threat to his brother. . . and thus is not guilty of First Degree Murder – After Deliberation." State Court R. Vol. III, at 496. The trial court instructed the jury in a general burden of proof instruction as well as in the first degree murder instruction that the prosecution had the burden of proving each element of a charged crime beyond a reasonable doubt, and if the prosecution failed to prove any one or more of the elements beyond a reasonable doubt, the jury must find the defendant not guilty of that crime. *Id.* at 488, 499. Additionally, the trial court provided general definitions of "with intent" and "after deliberation." *Id.* at 497.

The state appellate court rejected Petitioner's ineffective assistance of appellate counsel claim on the following grounds:

> Defendant alleges for the first time on this appeal that the trial court should have permitted a separate instruction to be tendered which would direct the jury that it had to consider [the trial court's] voluntary intoxication instruction as an affirmative defense to that charge, and that the prosecution was required to prove, beyond a reasonable doubt, that the intoxication did not prohibit [defendant] from forming the necessary mens rea of the first degree murder charge.

> We are not persuaded.

> Evidence of voluntary intoxication does not constitute an affirmative defense. *People v. Harlan*, 8 P.3d 448, 470-71 (Colo. 2000), overruled in part on other grounds by *People v. Miller*, 113 P.3d 743 (Colo. 2005); *see also Miller*, 113 P.3d at 750. Rather, section 18-1-804(1), C.R.S. 2010, serves as an "evidentiary rule permitting the introduction of evidence of voluntary intoxication to negate the requisite specific intent of the charged offense." *Harlan*, 8 P.3d at 471. Evidence of voluntary intoxication is admissible to counter the specific intent element of first degree murder. *Miller*, 113 P.3d at 750. Where a voluntary intoxication instruction is warranted, the trial court should affirmatively instruct the jury that specific intent for first degree murder includes both "intent" and "after deliberation," and may be negated by evidence of voluntary intoxication. *Id.* at 751.

> Here, reading the jury instructions as a whole, we conclude that the jury was adequately informed of the applicable law regarding voluntary intoxication. Specifically, the trial court instructed the jury regarding the

elements of first degree murder, the prosecution's burden of proof, and the elements of specific intent that could be negated by sufficient evidence of voluntary intoxication, as well as defendant's theory of the case. The trial court properly declined to instruct the jury that voluntary intoxication was an affirmative defense to first degree murder.

Accordingly, we conclude as a matter of law that appellate counsel was not deficient in failing to allege instructional error on this basis on defendant's direct appeal. . .

*Valenzuela II*, Pre-Answer Resp. Ex. L, at 3-7.

This Court does not review the Colorado Court of Appeals' determination that the voluntary intoxication instruction comported with the requirements of Colorado law. *See Estelle*, 502 U.S. at 67–68. Moreover, considering the jury instructions as a whole, Petitioner has not met his heavy burden to show that the trial court's refusal to give his tendered separate instruction on the voluntary intoxication defense rendered his trial fundamentally unfair so as to deprive him of a fair trial and to due process of law. *Nguyen*, 131 F.3d at 1357; *Tyler,* 163 F.3d at 1227; *Henderson*, 431 U.S. at 155. Because Petitioner's claim challenging the voluntary intoxication instruction is without merit, appellate counsel's failure to raise the issue on direct appeal was not constitutionally ineffective. *Cargle*, 317 F.3d at 1202 (quotation omitted). Petitioner is not entitled to federal habeas relief for his seventh claim.

# IV. CONCLUSION

Accordingly, it is ORDERED that Petitioner Rodney Valenzuela's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. No. 2) is DENIED as follows:

(1) Claims one, two, three, four, five and seven are dismissed WITH PREJUDICE.

(2) Claim six is dismissed WITHOUT PREJUDICE for lack of subject matter jurisdiction.

FURTHER ORDERED that each party shall bear his own costs and attorney's fees. It is

FURTHER ORDERED that no certificate of appealability will issue because Petitioner Rodney Valenzuela has not made a substantial showing that jurists of reason would find it debatable whether the jurisdictional ruling is correct and whether the Petition states a valid claim of the denial of a constitutional right.

Dated this 19th day of September, 2011.

BY THE COURT:

William J. Martínez
United States District Judge